Thompson is here for Martin, and Ms. Foster is here for the Social Security Administration. And Mr. Thompson, you may begin. May it please the court, I am Seth Thompson. I represent the appellant, Donald Larry Martin. This case confirms the application of 42 USC 415 A7, which is the windfall elimination provision. And some background of Mr. Martin. He, his service, he was a member of the Alabama Army National Guard. He worked as a technician, dual status, and oversaw or worked with personnel records of the Alabama Army National Guard. He did that. That makes him a federal civilian employee, right? It makes him under the, he's not only a federal civilian employee, but he's also a member of a armed service, a uniformed service, because his, unlike other federal employees, his work was dependent upon, and he could only keep his job. If he remained a member of the Army National Guard, and when his health no longer permitted him to, and he was diagnosed with asthma and became non-deployable. And at that point, in December of 2004, he was discharged from the Alabama Army National Guard and ultimately was discharged in April of 2005 from his job as a dual status technician. Let me ask you this question. So if we can get to the heart of the matter, we have to interpret, he's entitled to, he's entitled to come under the benefit of the uniform services exception. If his income, while he was a dual status technician, was based wholly, and that's the key word, wholly on service as a member of a uniform service. So do, I mean, you're interpreting this differently than the Social Security Administration. Do we have two reasonable interpretations of the statute? I think using just the plain language of the statute and referencing the service as a member of a uniformed service, which is defined, and the statute references it at 42 U.S.C. 410 E.M. I think using that definition, that makes him, and his job was entirely dependent, or as the New Manuscript Logic said, essentially military in nature. Case law. But what do we do with the word wholly, based wholly on service as a member of a uniformed service? And that term wholly, that is not defined in the statute, is it? No, sir, it is not. So we could disagree about what the term wholly means. We could reasonably disagree about what the term wholly means, couldn't we? Well, not when this circuit's case law has indicated that you can use the common definition or a dictionary definition to determine what wholly is, and that is considered entirely. So yes, I think that, and case law indicates that you can use that in the absence to explain, and I don't think there's a, using that, I don't think there's two different definitions of what wholly might mean. So you would have to argue that his work is wholly of a military character in order for him to obtain the benefits of the uniformed services exception, even though some of his work has civilian characteristics and some of his work has military characteristics. That's the problem that I'm having. Well, the civilian character of his job, as the record indicates, his was a, he was a civil service employee, and I agree. But he was also, his particular job as a dual status technician was a special accepted service, which is recognized and as being military in nature. Let me ask you, he received a civil service pension, did he? Yes, sir. How do you get a civil service pension if you're, if your work is as a military member? Well, unlike other members of the military, in 1968, the National Guard Technicians Act was passed, and it defined what his job was, and it was Congress's attempt to make the requirements uniform across the 50 states. And that is the way that Congress chose to treat it under 32 U.S.C. Section 709. There were non-military dual status technicians, but the majority of them were required to, because the statute in 709 indicates, and also in 10 U.S.C. Section 10216, it indicates, you know, that there were two different types. The majority, probably the, I think, if I remember correctly, about 90% of the positions were having to be, or be required to be in the military, to wear a military uniform for work, to maintain military physical standards. And as the case law has indicated, also be subject to the Uniform Code of Military Justice, which a normal civil service employee is not. When he was wearing his technician's hat, I don't, he wouldn't be subject to the UCMJ, would he? He would be, I think. And the case law, I think, has indicated in other instances, I think there is the, it's an unreported case, but it's the Pop versus Harvey. They recognized that when the technician was passed over for a promotion, it said that that conduct came under the Ferris Doctrine and it was military in nature. They recognized the other. Let me ask a question this way. As I understand this, the windfall that is being passed along, or not, is the ability to count and to include the time that you are working for which Social Security was not withheld, and computing your amount of entitlement under the employee where it was withheld, correct? Yes. Okay. So we kind of jump through this, withhold the WEP, the effort to prevent the windfall and then to create an exception to the windfall we get here. So if you follow the exception to the windfall, if it gets passed down, then the military member would get a windfall. And what would be the, what would that be if you were intending to give the military the windfall, and he is a, certainly a military member, what windfall, what work was he doing for which there was no payment of Social Security? The work that he was doing was his job as a dual status military technician, as the case law says, the Monday through Friday job. Now I will say that... And no Social Security was withheld for that? No sir, there was not. Okay. But the exceptions also recognize the fact, you know, not only is there the uniform services exception, but there's also an exception based on farm work that has a totalitization agreement as well as railroad work. And the same, same distinction. What I was trying to get in my mind was what work that a service member, someone on active duty, would do that would generate income that would not be subject to withholding. I don't know what other work he's going to be doing as a military member. But... So the idea of applying the giving, say it another way, the idea of giving to the military the windfall, is what? What windfall are they going to get? Well, the difference in his benefit and what it should be... He's now going to get credit for his own Social Security that was not withheld when he did it. I think the work that he is doing that Social Security wasn't withheld was the Monday through Friday portion of his job where he worked with personnel and he personnel records as his job as a technician. But once again, that work required him to be in uniform. If, depending on the job, he could have also not been, you know, he could have been a non or a technician that wasn't required to be in the military. And there are those that are available. And so because of that, he dealt with military things every day. He wasn't dealing with what a civil service employee would be dealing with. Well, I thought your... Maybe I just haven't followed the argument as well as I should have. But I thought your argument tracking with the Eighth Circuit ruled in, I think the case is called Peterson, was that the payment referred to in the statute is not the payment of salary, but the payment of the pension. And that pension is indeed based wholly on his military service because as a district court and the ALJ both found, his work was primarily military in nature. Yes, sir. Isn't that the argument? Right. Because you're not looking at whether his salary was wholly based on his military component. You're looking at to see whether the pension was based wholly on his military component. Yes, sir. And you say the answer to that question is yes. Yes, sir. That is correct. Thank you, Mr. Thompson. We'll hear from Ms. Foster. May it please the court, Sidney Foster for the government. Your Honors, Congress enacted the windfall elimination provision in order to ensure that individuals like plaintiff who are receiving retirement income based on work that was not subject to Social Security taxes do not get an unfair windfall in Social Security retirement benefits. Under the narrow uniform services exception that is at issue here, payments that are based wholly on service as a member of a uniform service do not trigger a reduction in Social Security retirement benefits. That exception clearly applies to military pensions that are based on military service like active duty service, inactive duty service, and so forth. And plaintiff actually gets the benefit of that exception with respect to a military pension that he is receiving that is based on precisely such service. That exception does not, however, apply to the civil service annuity that is at issue in this case, which is an annuity that is based on plaintiff's work in his capacity as a dual status technician in a position Congress specifically provided was a civilian position. The agency's position is that we can't rely on the plain language of the statute, that it's ambiguous, and therefore we have to apply Chevron or Skidmore deference to the agency's interpretation. Is that your argument? That's one of our arguments, Your Honor. We actually do think that the statute is clear and clearly supports the agency's position. But to the extent that it's ambiguous, then we do agree that this agency's interpretation is reasonable and entitled to deference. We certainly think that the statute does not unambiguously cover the type of civil service annuity that is at issue here. But my impression is that there are two reasonable interpretations of the statute. So therefore, we have to look to see whether or not the agency's interpretation is a reasonable one. And so the Eighth Circuit says, no, the Eighth Circuit's interpretation is not a reasonable one. So if this case were in the Eighth Circuit, you would lose, wouldn't you? That's correct. And actually, the Eighth Circuit didn't say that it was, not only said it was not reasonable, it said the statute precluded, the statutory text precluded the agency's interpretation. I think that just cannot possibly be correct. The Eighth Circuit decided this on Chevron step one. I think there's no way of reading the statute to necessarily preclude the agency's interpretation. So I think the question is whether or not the agency's interpretation is reasonable. And I think it plainly is. It follows quite naturally from the text of the statute, which, as your honors noted in questioning my friend here, provides that the only payments that are covered are payments that are based wholly on service as a member of a uniformed service. How are the, does the record contain any information about how it is that this civil service annuity portion is computed or calculated? What goes into that? I think there are no details about it. I think everyone agrees that it is based on his work and his capacity as a dual status technician. Right, but what does that mean? Well, it means that he earned it because of the work that he did as a dual status technician. Which means that it's based, at least in part, on his military service, right? Or no? It depends on how you define military service and service as a member of a uniformed service. Well, if he's getting credit, I use the word credit loosely, but if he's getting credit and not being overly penalized through the exclusion, right, for the military portion of his pension, you said he was getting, he's getting a military pension. Correct. Right? I mean, I know I'm simplifying this, but he's getting a military pension. Correct. And he's getting a civil service annuity payment too. That's correct. As I understand what has gone on through this litigation, he is not getting a deduction in Social Security benefits for the military portion of the pension. Correct. The only thing that's at issue is the civil service annuity stuff. Exactly. Okay. So he's at least, if the Social Security Administration is not, quote unquote, penalizing him for the military portion of it, it recognizes he did some work as a military service person. Correct. Right? Okay. Correct. So, I mean, at bottom, basically the annuity that we have at issue here isn't that military pension that's based on his active duty service, his inactive duty service like weekend drills in the National Guard. That's his military pension. This is a civil service annuity that's based on his technician work, and we know that that has civilian aspects to it. We know that from 10 U.S.C. 102.1.6, which refers to it as a civilian position three times, and says that dual status technicians should be accounted for as a separate category of civilian employees. We know that because when plaintiff was paid for his technician work, he got civil service pay, and he earned a civil service retirement annuity. That's the annuity that's at issue here. So we certainly know that his technician work at least has some civilian aspects to it. It follows, then, that the civil service annuity based on that technician work cannot possibly be an annuity that is based wholly on service as a member of a uniform service. And I think that's part of where the Eighth Circuit went wrong, not taking into account the word wholly, and given that they decided that case at Chipron Step 1, they didn't then have occasion to look at other considerations that would be relevant if you don't think that that statutory text is ambiguous, such as the legislative history, which, as we explained, strongly supports the agency's position. The legislative history here makes very clear that Congress's focus in enacting the uniform services exception was military pensions that are based on military service, like active duty and inactive duty. And specifically, Congress had a very narrow focus. It was concerned about a very specific type of military pension, the military pensions that are based on inactive duty service performed during a specific 30-year timeframe. Congress wanted to ensure that those military pensions did not trigger a reduction under the windfall elimination provision, and it wanted to do so because no other type of military pension did trigger a reduction under the windfall elimination provision. So if we create a circuit, you're asking us to create a circuit split with the Eighth Circuit, then? That's correct, Your Honor, and I realize that typically we try and avoid circuit splits, and part of the reason we try and avoid that is to have a uniform national law. I would just note in this particular context, if you instead decide to agree with the Eighth Circuit, that would actually cause more disruption nationally than if you instead affirmed the district court here and ruled for us. And the reason for that is that after the Eighth Circuit's decision in 2011 was issued, the Social Security Administration considered the question of whether it should go ahead and adopt that interpretation nationally, and it decided it would not. It decided its interpretation was the better interpretation of the statute, and so it issued an acquiescence ruling which said that it was going to apply its interpretation of the statute in every other circuit. So since 2011, in all these seven years… Have we ever afforded a Social Security acquiescence ruling Chevron deference? I don't think that question has come before this court, Your Honor, and it's not a question that you need to decide here for several reasons. I mean, number one, we think just that this court looks at the statute de novo, then our interpretation is the best one. Didn't the Third Circuit refuse to do that in Higgins v. Commissioner? That is correct, Your Honor, and again, that question we don't think is presented here, not only because we think we win if this court looks at the statutory interpretation question de novo, but also even if this court just assumes Skidmore deference applies, then as the district court itself said, if the district court said that we would win under Skidmore deference. What would the appropriate deference be in this case, Chevron or Skidmore, if we decided that we're going to defer to the agency's interpretation of the statute? Right. I mean, that's just not an issue that is presented because we went under Skidmore and also because plaintiff has not disputed the fact that Chevron is the appropriate framework. What are we giving deference to? The interpretation through practice of the administration or regulation or a formal ruling or a letter notice or what? Right. So the interpretation is embodied in a couple of different documents. It's embodied in the acquiescence ruling. That's where the SSA specifically said that these kind of annuities do not qualify for the uniformed services exception. It's also embodied in the preamble to the rule that amended the relevant regulations right after the uniformed services exception was enacted. That preamble makes clear that SSA understood the uniformed services exception to have a very limited impact to affect only these particular kinds of military pensions. I was talking about before that are based on inactive duty status during a particular 30 year time period. So those are the main places. But that doesn't address the specific circumstances of this case. That's a much more general, this is the purpose of this act sort of thing. I think it does, Your Honor, in the sense that SSA was saying in that document. The only type of pension that's affected by this new statutory provision are these particular types of pensions, these military pensions based on inactive duty status. That's the preamble to what? That's the preamble to the rule that was amending the regulations that implement this provision. And I can give you a citation for that if that would be helpful. We cite it in our brief, but it is at 60 Federal Register at pages 56511 to 12. And that was never codified into a rule? It just appeared in the Federal Register as what the SSA was planning to do, intending to do? That's correct. That's correct. That doesn't get Chevron deference, right? Generally speaking. We don't think that issue is presented here because not only do we win under Skidmore, but also plaintiff has throughout this litigation has assumed that the Chevron doctrine applies here. Yeah, but a lot of times we don't want to assume something like that because later on someone's going to come up and say, hey, you guys use Chevron deference in that circumstance and Chevron deference is inappropriate. And so we have to worry not only about the result in a case, but what appropriate way to reach it is. I totally understand, but I don't think you need to worry about that. If you say in your opinion, we don't need to decide whether the Chevron framework applies, whether Chevron deference is appropriate. You want us to avoid the level of deference issue. That's exactly right. We think you definitely can. And, you know, D.C. Circuit has done that in similar circumstances in the Lubau case that we cite in our brief. The Seventh Circuit did that in similar circumstances in the Kefalo's case. So that I mean, it's not it's a it's a waivable issue of a forfeitable issue. And plaintiff has assumed all along that Chevron deference applies. In our response brief, we noted that plaintiff had forfeited the Chevron deference, the argument that the Chevron framework doesn't apply. And in the reply brief, plaintiff did not dispute that argument. Not only did he not argue that Chevron doesn't apply, but also didn't argue that he hadn't forfeited the argument. So I think it would be very easy for this court to not reach that question, both because he's forfeited it, also because we win even under the lesser standard in Skidmore. I want to just address one one other point here, which is just to step back just a little bit and look at how plaintiff is being treated as compared to other kind of critical comparators. So, you know, one of the purposes of the National Guard Technicians Act in creating the dual the position of a dual status technician was, among other things, to ensure that dual status technicians are getting the same are getting adequate retirement benefits. And Congress effectuated that purpose by giving dual status technicians civil service retirement benefits, the same retirement benefits applicable to civil service servants generally. So it makes all the sense in the world for Social Security Administration to treat plaintiff just like any other civil servant who's receiving an annuity like this based on non covered work. And that's all that we're doing. And I'd also just note in a very critical respect that the Social Security Administration is also treating plaintiff on par with many members of the military service. And specifically, any members of the military service who performed military duty only on active duty status or on inactive duty status outside of that 30 year window that we were talking about a little bit earlier. And the reason for this, and I think this gets at some of the questions you were asking, Judge Higginbotham, is that active duty military service and just simplifying by looking at 1957 and later. But in those years, active duty military service and inactive duty military service, except for that 30 year window, were covered by Social Security. And so folks who were doing that service were paying into Social Security. So when their Social Security retirement benefits are calculated, they're just calculated under the ordinary formula that applies generally to anyone who is doing work in covered employment. Now, if we switch our focus to individuals like plaintiff who did some of their work in non covered employment, it makes sense that we should be applying the windfall elimination provision to them because if we don't, they're getting this unfair windfall that gives them an unfair windfall as compared to this group of folks who's working only in covered employment, which includes folks who did only work in active duty or in inactive duty during that 30 year period. So in that respect, plaintiff is actually being treated on par with folks who worked only in active duty or inactive duty during that 30 year period. If instead this court were to find that plaintiff is entitled to these extra benefits, he would be getting something on top above and beyond. But these folks who worked only in active duty or inactive duty during that 30 year time period. Why? What happens? Tell me again what happens to those people. Those people, if you worked only in active duty and I'm sorry, because active and inactive are a little bit hard to get out. But if you work only in active duty or inactive duty that's outside of that 30 year time period, you were working in employment that's covered by Social Security. So when it comes time to compute your Social Security retirement benefits, you just use the regular formula that applies to everyone else. Because you've been paying because you've been paying taxes. Right. Exactly. So there's no need for an adjustment. So they're just treated just like everyone else. If for some reason plaintiff does not if he is not subject to the windfall elimination provision, then he's getting this extra windfall and benefits above and beyond what those other folks that I just described are getting. And that's exactly what the windfall elimination provision was intended to eliminate. And the very narrow exception that Congress enacted for uniformed services, the uniformed services exception, was quite plainly meant to just target that limited group that I was talking about before, who performed military service while on inactive duty status during that narrow 30 year period. There's no indication whatsoever that Congress intended to to cover folks like plaintiff and the statutory language, especially its use of the word wholly makes that quite clear. I think we have your argument. Thank you, Ms. Foster. Thank you. We'll hear again from Mr. Thompson. Thank you. A couple of things that I would point out. The National Guard Technician Act is in 32 U.S.C. section 709. There is a portion of it that Ms. Foster referred to in 10 U.S.C. section 10216, but the provision. Now, one of the things that Ms. Foster said is that the legislative history of the 1994 amendment supported the agency's position that the windfall elimination provision should reduce Mr. Martin's benefits. And that the legislative history that I cited in my original brief, it indicates that and the conference committee adopted the House bill and it said whether on active or inactive duty and whether performed prior to 1988 or not, it would not trigger application of the government pension offset or the windfall elimination provision to the individual's Social Security benefits. And just to go back, unlike and Congress has recognized in other instances that they would make this windfall elimination provision not apply to certain segments of the workforce, you know, going back to the totalitization agreements that Social Security recognizes and also the railroad retirement. So I think, you know, the and I think also in the regulations that the commissioner follows that I also referenced in my brief, the under 404-1019, 404.1330 and 404-213, they all track this member of a uniformed service, which is defined in the statute at 42 U.S.C. section 410. And I think that is important because it shows a consistency of what the definition is. It shows that Social Security chooses to follow that. And but either Mr. And, you know, I don't think it is so much a question of an either or. I think either I think that Mr. Martin does meet the definition of a member of a uniformed service and therefore he should receive the benefit of not being of not having his retirement benefits reduced under the windfall elimination provision. Thank you. All right. Thank you, Mr. Thompson and Ms. Foster. We'll take the matter under advisement. And I think that completes the docket for this morning and the court will be in recess until 9 o'clock tomorrow morning. All right.